for today's 2019-30750 Charles F. Fischer, Jr. v. Edward Bickham, Warden. You may proceed with your argument. Good morning, I'm Lisa Sandu on behalf of Charles Fischer. There are two main issues in Mr. Fischer's case. First is timeliness, second is the claims of the Infectious Diseases Council. I think it bears noting Mr. Fischer was convicted in 1993, and since that point, he has asserted that he is innocent of the charge, the murder, second-degree murder charge, and he has tried to bring evidence to the court through a PCR, though at first, as a supplement, he had an Anders appeal. He tried to supplement that, but then later with his PCRs and his to show, look, these are the failings that happened during my trial. That hasn't deviated, that hasn't changed. This is a rather complicated record, or maybe convoluted. Could I ask just a quick question? If we determine that the petition is not time-barred, what relief do you seek? Just a simple remand, or do you seek something else? A remand. And that's not foreshadowing, I'm just asking. We would argue, or I would argue that remand would make the best sense. I'm going to just give a common sense based on the law. The state court, where his record is, where his conviction was, would be, where his claims should be vetted or heard. But I would say, yes, remand would be the relief sought. Remand of the federal district court? If you, well, yes. For them to analyze his claims, ultimately, of course, he's wanting, I'm sorry, I'm sorry. He's wanting a reversal of his conviction. Right, but we would just, it's little steps of what we have the power to do in this case. We agreed that it was timely, we would send it back to the federal district court for further proceedings. Yes, Judge. I would not argue against that. Do you have any particular questions? Because there's a lot here. Talk with me about, so part of the question, well, let's clarify this. What are the grounds by which you argue that the petition can be timely? Is it equitable tolling, actual innocence, both and, or something else? So, all of Mr. Fisher's arguments, or per se, based on what I can tell from his various filings, it would be, I argued equitable tolling and actual innocence. I think there's more actual innocence, but I think it's a combination. Let's talk about equitable tolling. So, equitable tolling, I'm going to paraphrase and boil it down a little bit. You've got to have an extraordinary circumstance, some extraordinary set of circumstances that justify excusing the untimeliness. And then you've also got to have reasonable diligence, right? What's the extraordinary circumstance? And then let's talk about diligence. The first extraordinary circumstance, and as I understand it on appeal, you're arguing that this Martinez case comes down and that's a change in the law and that's why he just, I guess, could kind of . . . He said he was judicially stagnated or whatever it was, but that restarted things. So, let's talk about what the extraordinary circumstance is. So, he thought when his first abuse was dismissed for being . . . In district court, federal district court. Yes, for being mixed. He didn't understand what he could do at that point. So, he did say or he thought that . . . I believe the quote was he couldn't go forwards or backwards, something to that effect. And then he thought he was stagnated. I believe inmate counsel gave him, at some point, advice to just wait. But the extraordinary circumstance, he is arguing or believes that . . . Well, he thought once Martinez came along that that was his way back in. But change in the law is not an extraordinary circumstance to excuse tolling because Martinez doesn't deal with tolling. He doesn't deal with unexhausted or mixed petitions. It just says something about if your first, I guess, PCR was not, was pro se, you could basically allege ineffective assistance of counsel to reach ineffective assistance of trial counsel, right? How does that then excuse the untimeliness of the filing? His argument is that because he had no counsel, that should excuse it. Well, but we don't even need to get to equitable tolling or actual innocence, some excuse of whether that exists, right, if we find a waiver by the state. And is that your best argument, this waiver by the state? The intentional relinquishment of the known right by saying they're not going to argue the timeliness? That would be a wonder, yes. Is that what you're seeking, yes or not? The answer is yes. Well, yes, if . . . yes, if . . . But we're going to be asking the state. That was question number one for them is are they waiving or are they not or have they waived when they stand up? But I was just getting at what your client's argument is as far as what is the extraordinary circumstance. And then as far as diligence, walk me through diligence. Okay, so diligence, this is where – that's why I started with, look, he brought all these proceed filings. They were – and I have to be careful, Howard. He did the best he could. He didn't understand the law. He didn't understand what he should do with the ruins that came down, with what he could do. And I won't interject my own opinions there, but he never – looking at the record, he never gave up. There is a span of time from 2009 to 13 where diligence is arguably an issue. Well, that's – yes, I think it is arguably an issue. And you've got these – But that's where his misunderstanding came in. And I know ignorance of the law is not an excuse. But once Martinez was ruled – or was rendered, he believed that was his way to get back in on the mixed petition. And at that point, he's done the same as before. So that's what we would – or what I would argue that he has been diligent and he believes he's been diligent. All right. If he was not diligent between 2009 and 2013 time frame, how does the change in law excuse the lack of diligence during that time frame? It would be untimely – the petition would be untimely even under that gap, right? Okay. I don't know how you get around that. I mean even for the procedural. Do you have anything else you want to present to us? Or does anyone have further questions? I'm not trying to cut anybody off. Just that his claim of actual innocence, I think bears – should be heard. Should be considered. Thank you. Thank you. Thank you. Do you know the first question? I think that's good. Record document 41 of the most recent habeas in which the former chief of appeals, Ben Cohen, said in the last sentence and in the interest of, quote, and in the interest of justice undersigned counsel consents to the timeliness of the petition for habeas corpus relief. Sounds like a waiver. Did I mail the document that you all have focused on? It doesn't seem very confusing. It is badly worded. I think the timing of it – Well, it's badly worded if the state now says – the state's not waiving. It's perfectly worded if they are waiving it or did waive it. I agree. And I didn't write it, so – But it's still a representation of the state. It is. It's a real person. It's not a forgery or anything. I didn't write it. And it's not been withdrawn. It has not. And when I looked at this record, it caused me concern. Well, the other thing, though, is that in the brief, I guess, the state says that Fisher arguably meets the standard for equitable tolling. So that's – is that waiver upon waiver? I think no, because waiver has to be explicit. And that's not explicit. Saying that he has a good argument and that there is an argument and it could go either way is not saying we waive it. What about combined with the other statement you just read? This reads like a waiver. This document reads like a waiver. And tell me what the document is. Remind me again. I'm sorry. It is the supplemental – it is labeled supplemental response to petition for habeas corpus release. This document was filed – In the district court. In the district court after the judgment when Mr. Fisher applied for a COA. And he did so untimely. And this court remanded it to the district court to determine whether or not he had timely asked for an appeal. And in figuring that out, the district court asked the parties if – for briefing on that matter. And that's when this was filed. So I read this as it's the timeliness of the COA. Because of where it is in the record, the timing of it. Had the state wanted to concede to the timeliness of the petition and waive timeliness, it would have done so earlier. And I guess the reason – I'm sorry, go ahead. Oh, go ahead. I guess the reason why this waiver is so important is because it is obvious from this case that there was no diligence. That a three-year, five-month, and 13-day gap between the denial of the COA in the first round and the filing of the state – the second state court PCR is inexcusable. And the district court – Well, what of Fisher's argument, though, that he files these mandamus petitions. He says he doesn't – he didn't get the rulings in various courts. And I'll grant that it happens frequently that he doesn't get things in long-term periods of lapse. But, I mean, he does go to the trouble of filing these mandamus petitions in the state courts. The procedure is at least awkward, if not irregular. So what do we do with that? Is that diligence? He was. So even if you look at the state court proceedings, he wasn't very diligent because his initial PCR was filed in October of 1996. He did not get the state district court's ruling on that. And so he waits until 2003 to file a writ of mandamus with the Fourth Circuit. He waited seven years? That's not diligent. So he wasn't diligent then. There was procedural irregularities where the Fourth Circuit then says,  for judicial efficiency, I guess. But then he comes to federal court. He knows what to do. He comes to federal court. Federal court then tells him, you have some unexhausted claims. His response in the – now I'm talking about the 2005 habeas. And his objections to the report and recommendation in the 2005 habeas really shows that he knows what exhaustion is. He just feels like he's exhausted everything. He says, he's like, I have exhausted everything. Well, he also argues, right, that it would be procedurally defaulted to pursue those claims in state court so he effectively couldn't. Yes. And so he didn't know what to do. But then the judgment comes out in the 2005 habeas. And it's very clear that even if you don't think you are going to win state court, even if you think you've brought those claims, even if you think they're procedurally defaulted, the federal court's telling him, go back and do it anyway so that you're exhausted. And had he gone back and exhausted them, almost – if he had gone back the day after and exhausted those claims, he still would have been untimely because habeas doesn't toll under EDPA. But at least he would have been able to show diligence. And he can't show it in this case. Can you address the actual innocence claim and whether that creates any opportunities for him here? Yes. The first time that he had raised actual innocence is through counsel. He has the entire time only said that there was this witness who could have maybe convinced a jury to find him not guilty. He has never said that he's actually innocent until now. The trial was consisted of two witnesses who saw Mr. Fisher shoot the victim. Well, there were problematic witnesses also. It wasn't one of them basically taking a completely different view than what he had taken before. I mean, there were issues with those two witnesses. I mean, in terms of them being credible witnesses, I guess. And then there's this law-abiding citizen who has this affidavit. The argument is, I guess, that witness is much more credible and would have made a difference with the jury. Yes. So I disagree with you that both of the state's witnesses were problematic. One was, and that was Mr. Young. He changed his story. He gave a statement to the police consistent with the state's evidence. He then changed his story. And then at trial, he went back to his initial statement and said, I saw Mr. Fisher shoot Kevin Smith. But is the combination of that problem, which I guess counsel didn't really fully explore on this going by the allegations of what Mr. Fisher says happened, with this witness that would have been helpful to him, gave an affidavit to that effect? I mean, does that combination not cast doubt on the verdict? I don't think it does because the second witness, Mr. Burrell, he was not incarcerated at the time. He admitted to selling drugs with the victim. That was the only thing that muddied him up. He was sitting in the driver's seat of the car as Mr. Smith was gunned down less than 10 feet away. Mr. Burrell was actually shot at by Mr. Fisher, and he never changed his story. That is compelling testimonial evidence that I don't think Kimmy Alexander could have overcome based upon the fact that she was just coming forward. She never opted to talk to the police. She never wanted to get involved. And she didn't even sign an affidavit until 2003. And that's another weird issue in this case, is that how do we have a 2003 affidavit from a 1996 claim? Was he diligently pursuing that claim even from the beginning? Well, and I guess to you we've got, first, you've got to hurdle the actual innocence exception to the time bar or what have you. And then you get into sort of the, we're sort of blurring the lines between the merits of an effective assistance claim and whether we can even get there because it's got to be almost, it's a taller hurdle to show actual innocence through this evidence, right? I mean, do I have that right? I think so. You know, actual innocence has to be more than just a swearing. It has to be more than I could have presented a witness that would have testified differently than the witness that testified at trial. It's also pretty telling that in Louisiana, the legislature passed a law a few years ago that allowed petitioners to file a petition. And it doesn't matter that they've raised the claim before. It doesn't matter that if they've filed one, two or three PCRs before all the time limitations are out the window, as long as they went to trial. And they had until December 31st of 2022 to file this in state court. And that didn't happen in this case. There's been no filing in state court by Mr. Fisher about actual innocence. The standard that the state puts forth is that there has to be, if there's testimonial evidence, it has to be corroborated by non-testimonial evidence. We have no non-testimonial evidence. We have no DNA. We don't have any evidence that's been presented as to his actual innocence and saying that a witness could have testified favorably for him, but different from a state's witness is simply not the standard for actual innocence. Do you have anything else that you want to present? I am concerned about the waiver part. Do y'all have more questions about that? So my, my position again, is just that, that, that where it falls in the record is I think, we have good evidence that it was badly worded and that we did not waive the timeliness of the petition. There had already been a judgment. There's no going back backwards on the other side of that judgment. And I think that Mr. Bowen was waiving the timeliness of the hearing.   And I agree with him on this. So yes, Mr. Mr. Cohen, the former chief and I agree with him on this, it reaching the merits of claims provides somewhat of a finality to these petitioners who, when they're playing. You're not claiming. You're not claiming that you can walk away from your grief. You're bound to your brief, right? No. Reaching the merits provides a finality. What we see a lot is that when the merits aren't reached, if a petitioner is denied on what they consider to be a technicality, they will continue to file. We are inundated with PCRs where they just keep trying to get hurt and they want to be heard in court. And it does provide finality. If that's something this court wants to do, that's fine. But it's simply not how the law is right now. Are you saying the state has an interest in actually having us reach the merits rather than deciding on technicalities? That's what I think you're saying. Yes, sir. I think the state has an interest in any court. And the petitioner has a valid interest in any court reaching the merits. And the state should be confident in their case and be confident that if the merits are put forward, that we'll still prevail. And I think that's the case here. Thank you. We have your argument. Thank you. Thank you. You saved time for rebuttal. Just a couple things. The state argued that Mr. Fisher wasn't very diligent and then brought up the 1996 to 2003 timeframe. He filed in 1996. Did not know that there may or may not have been, that there was a ruling by the district court in 98. He filed his 2002 affidavit believing that his PCR was still pending in state court. We would argue Kimmy Alexander's statements, what she would have offered in trial, of course, would have overcome Burrell and Young, both of whom were associates of a drug dealer. Mr. Fisher had told, I believe, both of them, or Mr. Young, not to sell drugs in front of his mother's house. But Kimmy Alexander was an eyewitness to this. Burrell had just as much incentive, whether he had pending charges or not. Young did have pending charges, so he had arguably incentive to support the states. But wasn't this witness known at the time of trial? But his attorney didn't call her. But why did it take 10 years to get an affidavit from her then? I can't answer that, except that he thought his PCR was still pending. But why wouldn't he have had that affidavit by the time he first filed in 1996? He could have. I don't know that he could have. Why not? Because of where he was incarcerated, I mean where he was imprisoned and as far as Because he wasn't represented in that entire time. Is that right? He was no longer represented? Correct. After appeal, he wasn't. But who would have gotten the affidavit for him? How he made that, that's not in the record. So that is something that he would testify or have to, that record would have to be developed on that issue. I can't speak out on that. Do you want us to reach the merits? We already said remand. Right, you already said remand. But in your closing counsel said, petitioners often see an interest in remand. He said, we do, and they do too. And I thought, well, he can't speak for you, so what's your interest? Mr. Fisher's claims have to be heard. Ultimately, the fact finder, our argument is the fact finder, did not have all the facts in front of them. So their ruling is compromised. It wasn't a good decision. It wasn't. His convictions would be thrown out essentially, right? It's difficult. That's asking a lot of y'all to reach the merits. We don't have the equipment here? Is that your position? Well, I would. That's okay. You can say that to us. The common sense part of me, yes. Okay. Thank you. Thank you very much. Anything else? Okay. We have this argument. The case is submitted. We note that you were CJA appointed. Thank you for your service to the court. Thank you. Thank you.